UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHELLY M. MILES,

                                Plaintiff,

v.                                                                           6:06-CV-0391
                                                                                          (LEK/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SHELLY M. MILES<br>Plaintiff *pro se*<br>8829 Camroden Road #5<br>Holland Patent, New York 13354 | |
| HON. ANDREW T. BAXTER<br>Acting United States Attorney for the<br> Northern District of New York<br>*Counsel for Defendant*<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | |
| OFFICE OF GENERAL COUNSEL<br>Social Security Administration<br>26 Federal Plaza<br>New York, New York 10278 | BARBARA L. SPIVAK, ESQ.<br>Chief Counsel, Region II<br><br>SHEENA V. WILLIAMS-BARR, ESQ.<br>Special Assistant U.S. Attorney |

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION

      This matter was referred to the undersigned for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  Because I find that the

Administrative Law Judge erroneously failed to address Plaintiff's osteopenia, I recommend that the matter be remanded for further proceedings.

**I.     PROCEDURAL HISTORY**

Plaintiff applied for Supplemental Security Income on January 21, 2003.  (Administrative Transcript ("T") at 48-53.)  The application was denied on March 14, 2003. (T. at 32-35.)  Plaintiff requested a review of the record by an Administrative Law Judge ("ALJ"), waiving her right to appear before the ALJ.  (T. at 36, 39.)  On August 14, 2003, ALJ John M. Lischak issued a decision finding that Plaintiff was not disabled.  (T. at 200-09.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 24, 2006. (T. at 6-8.)

Plaintiff filed a subsequent claim for benefits that resulted in an August 25, 2005, denial by ALJ Alan J. Sacks.  (T. at 11-23, 210-16, 225-28, 335-71.)  The August 25, 2005, decision by ALJ Sacks is not the subject of this action.  (Dkt. No. 1.)

Plaintiff commenced this action on March 27, 2006.  (Dkt. No. 1.)  Plaintiff challenges the February 24, 2006, final decision of the Commissioner of Social Security ("Defendant") adopting the August 14, 2003, decision by ALJ Lischak.

On July 19, 2006, Defendant filed the administrative transcript.  The transcript is extremely poorly organized.  It contains records pertinent to both the August 14, 2003, decision by ALJ Lischak, which is the subject of this action, and the subsequent August 25, 2005, decision by ALJ Sacks, which is not the subject of this action.  It also includes the transcript of a January 13, 1998, hearing before ALJ Joachim Volhard, which is not the subject of this action. (T. at 301-34.)

Defendant answered on July 23, 2006.  (Dkt. No. 9.)

Pursuant to General Order 18 of the Northern District of New York, Plaintiff's brief was due on September 6, 2006.  Plaintiff did not file her brief on September 6, 2006, or at any time in October, November, or December 2006.  On January 10, 2007, the undersigned issued an order directing Defendant to file a brief within 60 days and further ordering that "Plaintiff shall then have **forty-five (45) days** after service of Defendant's brief within which to serve and file a brief in support of Plaintiff's position."  (Dkt. No. 10, emphasis in original.)

After requesting and receiving one extension (Dkt. Nos. 11-12), Defendant filed his brief on May 30, 2007.  (Dkt. No. 15.)  Defendant's brief focuses entirely on the August 25, 2005, decision by ALJ Sacks, which is not the subject of this action.

To date, Plaintiff has not filed a brief.

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2007). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the

defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197

(1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III.  THE PLAINTIFF

Plaintiff is 46 years old. (T. at 48.) Plaintiff did not graduate from high school, but earned her GED. (T. at 86.) Plaintiff has clerked in retail stores, taught preschool, and worked in a factory. (T. at 71, 81.) In her January 2003 application, which is the subject of this action, Plaintiff alleges disability due to asthma, chronic obstructive pulmonary disease ("COPD"), arthritis in the lower back, and osteopenia[1]. (T. at 80.)

### IV.  THE ALJ'S DECISION

The ALJ found that (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; (2) Plaintiff's chest pain is not severe, but her asthma, COPD and arthritis are severe impairments; (3) none of Plaintiff's severe impairments meet or medically equal a Listing; (4) Plaintiff is not totally credible; (5) Plaintiff has the residual functional capacity ("RFC") to perform substantially all of the full range of light work but cannot tolerate excessive exposure to environment irritants and airborne allergens; (6) Plaintiff cannot perform

---

[1]  Osteopenia is "reduced bone mass due to a decrease in the rate of osteogenesis." Dorland's Illustrated Medical Dictionary 1369 (31st ed. 2007).

her past relevant work; (7) based on Plaintiff's RFC and her age, education and work experience, the Grids direct a conclusion of "not disabled;" and (8) Plaintiff is not disabled.  (T. at 207-08.)

V.      DISCUSSION

   A.      **Plaintiff's Failure to File Papers in Response to Defendant's Motion for Judgment on the Pleadings**

This Court's General Order 18 sets forth the briefing schedule in Social Security cases. After Plaintiff failed to comply with General Order 18, the undersigned issued an order of January 10, 2007, which directed Plaintiff to file her brief within 45 days after service of Defendant's brief.  Despite this, Plaintiff filed neither papers opposing Defendant's motion nor a request to enlarge the time within which to oppose Defendant's motion.

In the usual civil case, a plaintiff's failure to comply with court orders would subject the complaint to dismissal under Federal Rule of Civil Procedure 41(b).  In addition, other Districts in the Second Circuit have held that where a Social Security plaintiff files a complaint but fails to file a brief on the merits, the complaint is conclusory and insufficient to defeat a motion for judgment on the pleadings.  *Winegard v. Barnhart,* No. 02-CV-6231 CJS, 2006 WL 1455479, at *9-10 (W.D.N.Y. Apr. 5, 2006); *Feliciano v. Barnhart*, Civ. No. 04-9554 KMW AJP, 2005 WL 1693835, at *10 (S.D.N.Y. July 21, 2005); *Reyes v. Barnhart*, Civ. No. 01-4059 LTS JCF, 2004 WL 439495, at *3 (S.D.N.Y. Mar. 9, 2004).

In this District, however, General Order No. 18 mandates a different course in Social Security cases.  General Order 18 contains the following "Notification of the Consequences of Failing to File a Brief ...: Plaintiff's brief is the only opportunity for Plaintiff to set forth the errors Plaintiff contends were made by the Commissioner of Social Security that entitle Plaintiff to

relief. The failure to file a brief as required by this Order will result in the consideration of this appeal without the benefit of Plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of the facts and subsequent dismissal of your appeal." (General Order No. 18 at 4.) General Order 18 thus states that the Court will "consider" the case notwithstanding a plaintiff's failure to file a brief, albeit in a way that might be "heavily influenced by the Commissioner's version of the facts." In a case such as this, where the plaintiff is proceeding *pro se*, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for *pro se* litigants. Accordingly, the Court has, despite Plaintiff's failure to file a brief, examined the record to determine whether the ALJ applied the correct legal standards and reached a decision based on substantial evidence.

    **B.**    **The ALJ's Finding That Plaintiff Was Not Engaged in Substantial Gainful Activity Is Supported By Substantial Evidence.**

The first step of the evaluation is to determine whether Plaintiff was engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2008). Substantial gainful activity is defined as work that "involves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 404.1572 (2008). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. at 204, 207.) Defendant does not dispute this finding. (Dkt. No. 15.)

    **C**.    **The ALJ Erred By Failing to Address Plaintiff's Osetopenia.**

At the second step of the evaluation, the medical severity of a claimant's impairments is considered. 20 C.F.R. § 404.1520(a)(4)(ii) (2008). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or

mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521 (2008). "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2008). These include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b) (2008). *See also Ianni v. Barnhart*, Civ. No. 02-74A, 2005 WL 3220220, *11 (W.D.N.Y. Nov. 18, 2005) and *Camacho v. Apfel*, Civ. No. 97-6151, 1998 WL 813409, at *6 (E.D.N.Y. July 22, 1998).

Based upon the medical evidence, the ALJ concluded that Plaintiff suffers from severe asthma, COPD and arthritis. (T. at 205.) Defendant does not dispute this finding. (Dkt. No. 15.)

The ALJ found that Plaintiff's chest pain was not severe. (T. at 205.) The ALJ's finding is supported by substantial evidence. Nothing in the record indicates that Plaintiff's cardiac impairment significantly limits her physical or mental ability to do basic work activities.

The record shows that Plaintiff consistently told her treating physicians that she was having chest pains and difficulty breathing. (T. at 102, 115, 118, 141.) Despite these reports, her treating physician consistently found that Plaintiff's lungs were clear and that her heart had a normal rhythm. (T. at 102, 104, 105, 106, 107, 108, 109, 110, 111, 116, 117, 118, 121.) However, due to Plaintiff's family history of heart attacks her treating physician referred her to cardiologist Hugh C. MacIsaac, M.D.

Dr. MacIsaac saw Plaintiff on August 15, 2002. (T. at 152-153.) Dr. MacIsaac's impression was "intractable chest pains, multiple cardiac risk factors, despite negative stress

test." He recommended that Plaintiff undergo a cardiac catheterization "to resolve refractory symptoms." (T. at 153.) Plaintiff underwent the catheterization on August 26, 2002. It showed "normal systolic function with ejection fraction of 60%. Coronary angiography was completely normal with dominant right coronary system. Due to her small body size, coronary arteries are also relatively small in caliber." (T. at 157.) The conclusion was "[n]ormal ventricular function" and "[n]ormal coronaries." (T. at 159.) Plaintiff was "reassured accordingly." (T. at 157.)

Pulmonologist Dr. Komgrit Chukiert, who examined Plaintiff several times on referral from Plaintiff's treating physician, noted in the course of pulmonary examination that Plaintiff's "heart rate did become very tachycardic and I wonder if there is a cardiac problem that potentially could be going on as to whether she is deconditioned or has a valve disease." (T. at 262.)

Examining consultant Kalyani Ganesh, M.D., who examined Plaintiff several months after Dr. Chukiert expressed concern, found that Plaintiff's chest and heart were normal. (T. at 173.) Dr. Ganesh diagnosed, *inter alia*,"[c]hest pain with normal coronary arteries." (T. at 174.) Dr. Ganesh found that Plaintiff had no limitation on sitting, standing or the use of her upper extremities and a mild degree of limitation on walking, climbing, lifting, carrying, pushing, pulling, and bending. (T. at 174.) Dr. Ganesh did not opine that Plaintiff's mild limitations were the result of any cardiac impairment[2]. Thus, no evidence in the record suggests that Plaintiff's cardiac condition significantly limits her physical or mental ability to do basic work activities.

The ALJ erred, however, by failing to address Plaintiff's osteopenia. The Regulations state that the Commissioner "will consider only impairments you say you have or about which

---

[2]    Dr. Ganesh also diagnosed Plaintiff with arthritis of the lower back. It is likely that the mild limitations that Dr. Ganesh noted were the result of that condition.

10

we receive evidence." 20 C.F.R. § 404.1512(a) (2008).  In her SSI application, Plaintiff alleged that she suffered from "asthma, COPD, arthritis in lower back, osteopenia of bone density." (T. at 80.)  The agency, however, apparently misread the word "osteopenia" as "osteo*panic*."  The initial denial stated that Plaintiff claimed that she was "disabled because of asthma, a back problem, chest pain, *and an emotional problem*."  (T. at 35, emphasis added.)  The ALJ's decision stated that Plaintiff "alleges disability due to asthma, chronic obstructive pulmonary disease (COPD) and lower back pain."  (T. at 203.)  The ALJ's decision addressed neither osteopenia nor any "emotional problem."  The ALJ thus failed to consider an impairment that Plaintiff "say[s] she ha[s]."

The agency received evidence regarding Plaintiff's osteopenia.  On November 8, 2002, bone density studies showed that Plaintiff's bone density "values for the spine are within the lower limits of normal" and that "bone mineral density values for the hip are within the osteopenic range.  The degree of bone loss increases her risk for hip fracture *approximately three to four times that of someone with normal bone mass*."  (T. at 127, emphasis added.)  Plaintiff provided the agency with a copy of this study and the agency's initial denial lists the study as one of the documents that was considered.  (T. at 35, 78.)  The ALJ's decision, however, makes no mention of the study.  Thus, the ALJ failed to consider an impairment "about which we receive[d] evidence."

An ALJ's failure to apply the correct legal standard as set forth in the Regulations subjects an action to remand unless the error is harmless.  *See Kohler v. Astrue*, ____ F.3d ____, 2008 WL 4589156 (2d. Cir. Oct. 16, 2008) (ALJ's failure to adhere to the Regulations regarding the "special technique" for evaluating the severity of a mental impairment was not harmless

11

because, due to conflicting evidence in the record, "[e]ffective review ... is frustrated by the [ALJ's] failure to adhere to the Regulations"); *Schall v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998) (ALJ's failure to adhere to the Regulations regarding the weight to be given to the opinion of a treating physician was not harmless, in part because "application of the correct legal standard does not lead inexorably to a single conclusion").

Here, the ALJ's error was not harmless. According to the bone density study, Plaintiff is at an increased risk for hip fracture. It is likely that this increased risk significantly limits her physical ability to do basic work activities. The ALJ's failure to address the impairment at all taints the remainder of the ALJ's findings. Accordingly, remand for further proceedings is appropriate.

### D.     The ALJ Erred By Failing To Address Plaintiff's Osteopenia At Step Three.

At the third step, a claimant is automatically entitled to benefits if his or her impairment(s) meets criteria set forth in "the Listings." 20 C.F.R. § 404.1520(d) (2007). When evaluating whether a claimant's impairments meet or equal a Listing, the ALJ must refer to the specific criteria set forth in the Listing. *See, e.g., Morales v. Barnhart*, 218 F. Supp. 2d 450, 459-460 (S.D.N.Y. 2002). An ALJ must set forth his or her analysis of the Listing criteria, like other "crucial factors in any determination ...with sufficient specificity to enable (a reviewing court) to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984). A reviewing court "cannot make an independent determination as to whether the record supports a finding that Plaintiff meets or equals (a Listing). Instead ... the ALJ needs to articulate his basis for finding that Plaintiff does not meet or equal the criteria" for a particular listing. *Hendricks v. Commissioner of Social Security*, 452

F. Supp. 2d 194, 199 (W.D.N.Y. 2006).

In order to meet the Listing criteria for asthma, a plaintiff must either (a) suffer chronic asthmatic bronchitis, analyzed under Listing 3.02A for chronic obstructive pulmonary disease; or (b) suffer attacks requiring physician intervention at least once every two months or at least six times a year. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 3.03 (2008). Here, the ALJ found that "[t]here is no evidence of chronic asthmatic bronchitis nor does she suffer acute attacks requiring physician intervention an average of six times per year." (T. at 205.) Although the ALJ did not specifically cite Listing 3.02A, he applied the correct criteria from that Listing. His factual findings are supported by substantial evidence. Therefore, the matter is not subject to remand on this ground.

COPD is analyzed under Listing 3.02(A). A claimant who suffers from COPD due to any cause meets the Listing if she has a forced expiratory volume in one second (FEV1) equal to or less than the values specified in a table included in the Listing. Based on Plaintiff's height, 60 inches (T. at 79), an FEV1 of 1.05 or less would qualify her as disabled. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 3.02 (2008). In finding that Plaintiff did not meet the Listing for COPD, the ALJ stated that "Dr. Kalyani Ganesh, a consultative examiner, noted that the claimant's lungs were clear. AP diameter was normal and there was no significant chest wall abnormality. There were no wheezes, rales or rhonchi. Despite extensive warnings, the claimant continues to smoke cigarettes." (T. at 205.) The ALJ did not discuss Plaintiff's FEV1. Thus, the ALJ did not apply the criteria discussed in the Listing. However, any error was harmless because there is no conflicting evidence in the record and application of the correct legal standard leads inexorably to a single conclusion: Plaintiff does not meet the criteria of Listing 3.02A. On July 5, 2002, Dr.

Chukiert noted that Plaintiff's FEB1 was 2.67 and this level "has not changed from a spirometry that I see from Syracuse in March of this year which shows the FEV1 to be around the same range." (T. at 262.) Therefore, remand is not appropriate on this ground.

Arthritis is analyzed under Listing 1.04. The Listing has a general requirement and three alternative subrequirements. In order for a plaintiff's arthritis to meet the general requirement for arthritis under the Listing, the ALJ must find that the plaintiff suffers from osteoarthritis or facet arthritis resulting in compromise of a nerve root or the spinal cord. The subrequirement in Listing 1.04A further requires (a) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (b) limitation of motion of the spine; (c) motor loss (atrophy with associated muscle weakness or muscle weakness); (d) sensory or reflex loss; and (e) positive straight-leg raising test if the lower back is involved. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04 (2008).

The subrequirement specified by Listing 1.04B is: "Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04 (2008).

The subrequirement specified by Listing 1.04C is: "Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04 (2008).

Here, the ALJ found that there is "no evidence of bulging, herniation or nerve root

disorder. There is no evidence of compression fracture or dislocation. There is no muscle wasting, asymmetry or atrophy. There is no bowel or bladder dysfunction. She does not require assistive devices to ambulate. Surgery has not been recommended." (T. at 205.) Although the ALJ did not refer specifically to Listing 1.04, his findings referred to the criteria described by the Listing and those findings are supported by substantial evidence.

Dr. Kalyani Ganesh, a consultative examiner, examined Plaintiff on February 27, 2003. Regarding Plaintiff's back impairment, Dr. Ganesh found "[g]ait normal. [Plaintiff] states she cannot walk on heels and toes. She cannot squat. Stance is normal. Uses no assistive devices. Needs no help changing for exam. Needs no help getting on and off exam table. Able to rise from chair without difficulty ... Cervical spine flexion is full, extension 25 degrees. Lateral flexion and rotation full. Complains of pain. No scoliosis or kyphosis or abnormality in the thoracic spine. Lumbar spine flexion is 90 degrees. [Plaintiff] states she cannot do extension. Lateral flexion 10 degrees. [Plaintiff] states she cannot do rotation. [Straight leg raise] negative bilaterally. Full [range of motion] of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips, knees, and ankles bilaterally. Strength 5/5 in the upper and lower extremities. No evident subluxations, contractures, ankylosis, or thickening. Joints stable and nontender. No redness, heat, swelling, or effusion." (T. at 173-174.) Dr. Ganesh found that Plaintiff had "[n]o limitation to sitting, standing, the use of the upper extremities. She has a mild degree of limitation to walking, climbing, lifting, carrying, pushing, pulling, and bending." (T. at 174.) Thus, Plaintiff did not meet Listing 1.04.

However, remand is required, as discussed above, because the ALJ failed to address Plaintiff's osteopenia. On remand, the ALJ should determine whether Plaintiff's osteopenia is

"severe" and, if it is, whether it meets or equals a Listing.

> **E.     The ALJ's Finding That Plaintiff Has The RFC To Do Light Work Is Not Supported By Substantial Evidence Because The ALJ Did Not Address Plaintiff's Osteopenia.**

At the fourth step, a claimant's RFC and past relevant work are considered.  20 C.F.R. § 1520(a)(4)(iv) (2008).  Here, the ALJ found that Plaintiff has "the following residual functional capacity: light[3].  Cannot tolerate excessive exposure to environmental irritants and airborne allergens."  (T. at 208.)

In determining a plaintiff's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including [a plaintiff's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, crouch, a plaintiff's mental abilities, and any environmental limitations].  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  Social Security Ruling ("S.S.R.") 96-8p, 1996 WL 374184, at *1-2, *Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996); *see also Mardukhayev v. Comm'r of Soc. Sec.*, Civ. No. 01-1324, 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002).

Other circuits have held that "[a]lthough a function-by-function analysis is desirable, the

---

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b) (2005).

ALJ need not discuss each factor in his written opinion." *Delgado v. Comm'r of Soc. Sec*, 30 Fed. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v . Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. 2000)).  The Second Circuit, however, has not specifically addressed the application of SSR 96-8p.  *See Novak v. Astrue*, No. 07 Civ. 8435 (SAS), 2008 WL 2882638, at 3 (S.D.N.Y. July 25, 2008)[4].  In another context, however, as noted above, the Second Circuit has recently used a harmless error standard, remanding a case when an ALJ's failure to adhere to the Regulations "frustrated effective review" and the deficiencies in the ALJ's analysis were "compounded by the ALJ's tendency to overlook or mischaracterize relevant evidence, often to [the plaintiff's] disadvantage."  *Kohler v. Astrue*, ____ F.3d ____, 2008 WL 4589156 (2d Cir. Oct. 16, 2008).  The undersigned will apply the harmless error standard here.

---

[4]   The Southern District of New York appears to have adopted the interpretation that a discussion of each factor is "desirable" rather than mandatory.  *See e.g. Novak*, *supra*; *Casino-Ortiz v. Astrue*, No. 06 Civ. 0155 (DAB)(JCF), 2007 WL 2745704, at * 13 (S.D.N.Y. Sept. 21, 2007).  In contrast, judges in this District and in the Eastern and Western Districts of New York have remanded cases based on the ALJ's failure to explicitly discuss a function-by-function analysis in the hearing decision.  *McMullen v. Astrue*, No. 5:05-CV-1484 (LEK/GHL), 2008 WL 3884359, at *6 (Aug. 18, 2008) ("[T]he ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis.  The ALJ failed to specify the weight that Plaintiff could lift and/or carry or the amount of time that he could sit, walk, and stand"); *Ashcraft v. Comm'r of Soc.* Sec., No. 7:05-CV-1342 (GLS/DEP) 2008 WL 2967512, at * 12 (N.D.N.Y. July 28, 2008); *Aull v. Astrue,* No. 5:05-CV-1196 (LEK/DEP), 2008 WL 2705520, at * 16 (N.D.N.Y. July 10, 2008); *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y. 2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk ... Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence"); *Brown v. Barnhart*, No. 01-CV-2962 (JG), 2002 WL 603044, at *5 & n. 5 (E.D.N.Y.  Apr. 15, 2002)(remand required by ALJ's failure to perform function-by-function analysis); *Mardukhayev v. Comm'r of Soc. Sec.*, No. 01-CV-1324 (JG), 2002 WL 603041, at *5 (E.D.N.Y. March 29, 2002).

Here, the ALJ's decision does not set forth a function-by-function analysis of Plaintiff's ability to do work-related tasks.  This deficiency is compounded by the ALJ's failure to address Plaintiff's osteopenia, a condition that according to uncontroverted evidence in the record substantially increases Plaintiff's risk for suffering hip fractures.  This would appear to limit Plaintiff's ability to do substantially all of the activities required for light work.  Thus, the ALJ's error was not harmless.  Accordingly, remand is required so that the ALJ can address Plaintiff's osteopenia.

### F. The ALJ's Reliance On The Grids At Step Five Is Not Supported By Substantial Evidence.

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process . . . , the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2 . . . .  The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.  Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy.  Generally the result listed in the Grid is dispositive on the issue of disability.

*Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (footnotes omitted): *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  The Grid classifies work into five categories based on the exertional requirements of different occupations.  The Grid divides work into sedentary, light, medium, heavy and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull.  *Zorilla*, 915 F. Supp at 667 n.2; see also 20 C.F.R. § 404.1567(a).

  Each exertional category of work has its own Grid.  The Grid yields a decision of

"disabled" or "not disabled," taking into account the claimant's RFC, age, education, and prior work experience. 20 C.F.R. § 404.1569 and 20 C.F.R. § 404, Subpt. P, App. 2, § 200.00(c). Where there are "discrepancies" between the claimant's abilities and the Grid factors, where the claimant's exertional impairments are compounded by significant non-exertional impairments[5] that limit the range of work an individual can perform, or where there is no substantial evidence that a claimant can perform the full range of a particular category of work, then the relevant facts are to be considered in light of the vocational considerations outlined in the Code of Federal Regulations at 20 C.F.R. § 416.969(a). If a claimant cannot perform the full range of an exertional category of work, then an individual assessment may be required. *Zorilla*, 915 F. Supp at 667 (citing *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)).

Here, the ALJ relied on the Grid to find that Plaintiff is not disabled. (T. at 207.) On remand, the ALJ should consider whether Plaintiff's osteopenia renders use of the Grid inappropriate.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[6] for further proceedings consistent with the above.

---

[5] A "significant" nonexertional limitation is one that results in "the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986).

[6] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 12, 2008
       Syracuse, New York

                                            George H. Lowe
                                            United States Magistrate Judge